UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06-cv-173-R

ABDALLA EL BANNAN,
Ancillary Administrator of the
Estate of Nadia Shaheen, deceased                                                    PLAINTIFF

v.

BURGESS HARRISON YONTS, et. al.,                                                    DEFENDANTS

## OPINION & ORDER

This matter comes before the Court on Defendant Burgess Harrison Yonts' ("Yonts")

Motion to Quash and/or Motion for Protective Order (Docket #304) regarding the scheduled

deposition of his parents, Mr. & Mrs. Brent ("Mr. Yonts") and Janice ("Mrs. Yonts") Yonts. Mr.

Yonts, on behalf of his son, has also filed a "response" to the Defendant's motion, requesting

that the Defendant's motions be granted (Docket #306). The Plaintiff has also responded,

objecting to the motions (Docket #329). Yonts has replied to the Plaintiff's response (Docket

#346). This matter is now ripe for adjudication. For the following reasons, the Defendant's

Motions are **DENIED**.

## BACKGROUND

The parents of the Defendant have been subpoenaed to provide depositions to the

Plaintiff. The Defendant seeks to quash these subpoenas and preclude the depositions of Mr. &

Mrs. Yonts, arguing that under KRE 503 the attorney-client privilege prohibits their depositions

in this matter. The Defendant contends that after the car accident in November 2005, the

Defendant consulted with his father, and therefore, an attorney-client relationship was created

between the two of them. In addition, the Defendant claims that his father was on his criminal

defense legal team along with attorney Dennis Knolls. Lastly, the Defendant claims that his

mother assisted the legal team at the discretion of Mr. Yonts, and therefore, was a representative of her son and/or Mr. Yonts for purposes of asserting the attorney-client privilege.

## DISCUSSION

In support of his argument that the attorney-client privilege applies to Mr. & Mrs. Yonts, the Defendant has cited two (2) Kentucky state cases. In addition, the Defendant also claims that even if the attorney-client privilege does not apply, as an attorney on his son's case, Mr. Yonts cannot be deposed because the "*Shelton* Test" precludes the deposition of both Mr. & Mrs. Yonts. The Court shall first address whether the attorney-client privilege applies to the proposed depositions of Mr. & Mrs. Yonts. Then, the Court shall determine whether the "*Shelton* Test" precludes the depositions of Mr. & Mrs. Yonts.

### 1. Attorney-Client Privilege

Kentucky Rule of Evidence Rule 503 states, in pertinent part:

(a) Definitions. As used in this rule:

(1) "Client" means a person, including a public officer, corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer.
(2) "Representative of the client" means:
(A) A person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client; or
(B) Any employee or representative of the client who makes or receives a confidential communication:
(i) In the course and scope of his or her employment;
(ii) Concerning the subject matter of his or her employment; and
(iii) To effectuate legal representation for the client.
(3) "Lawyer" means a person authorized, or reasonably believed by the client to be authorized to engage in the practice of law in any state or nation.
(4) "Representative of the lawyer" means a person employed by the lawyer to assist the lawyer in rendering professional legal services.
(5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of

professional legal services to the client or those reasonably necessary for the transmission of the communication.

(b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client:
(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
(2) Between the lawyer and a representative of the lawyer;
(3) By the client or a representative of the client or the client's lawyer or a representative of the lawyer representing another party in a pending action and concerning a matter of common interest therein;
(4) Between representatives of the client or between the client and a representative of the client; or
(5) Among lawyers and their representatives representing the same client.

(c) Who may claim the privilege. The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

In determining whether a relationship between two (2) persons establishes the attorney-client privilege, Courts look to the following elements for guidance:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived.

*Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 19 F.3d 1432 (Table), *5 (6th Cir. 1994)(quoting *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964)).

The burden of establishing the existence of the attorney-client privilege lies with the party who seeks to assert its protections. *Futrell v. Shadoan*, 828 S.W.2d 649, 651 (Ky. 1992); *see also In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir.1983).

3

Communications that occur in confidence between an attorney and a client lose their confidentiality as well as the protection of the attorney-client privilege if the client voluntarily discloses them to a third party. *Lexington Public Library v. Clark, Ky.*, 90 S.W.3d 53, 61 (2002). Additionally, the attorney-client privilege does not shield from disclosure any statements made by the client to his/her attorney in the presence of a third party. *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998); *see also U.S. v. Hodges*, 448 F.2d 1309, 1313 n. 5 (6th Cir. 1971).

In the instant matter, the Defendant claims his communications with his parents are protected by the attorney-client privilege because he sought his father's "professional legal services" as an attorney, and that his mother was a representative of the Defendant and/or her husband for purposes of KRE 503.  However, the Defendant has not offered any specific evidence to support the contention that the Defendant sought out his father for his professional services or that his father was acting in his capacity as a legal advisor when the Mr. Yonts and his son communicated about the incident in question.  The Defendant has not even asserted what general area of communications are privileged, and/or the context in which the communications between Mr. Yonts and the Defendant took place.  From the Defendant's motion, the Court cannot differentiate between whether or not the Defendant sought out his father as an attorney or as a parental figure, or whether Mr. Yonts represented his son as an attorney or as a concerned parent.  Accordingly, the Defendant has not met his burden in proving that the attorney-client privilege exists as to the communications between the Defendant and Mr. Yonts.

Even assuming, for purposes of this analysis, that an attorney-client privilege exists between the Defendant and Mr. Yonts, this privilege would in no way extend to Mrs. Yonts as a representative of either the Defendant and/or Mr. Yonts.  The Defendant cites KRE 503 in

support of its contention that Mrs. Yonts' testimony is protected; however, he fails to demonstrate that part of Mrs. Yonts' employment would require her to assist in the representation of the Defendant. KRE 503(a)(2) & (4) mandate that as a representative of the client and/or attorney of the client the representative must either have the legal authority to obtain professional legal services on behalf of the client and/or through the course of her employment assists in rendering legal services to the client. The Defendant has not put forth any evidence to prove that Mrs. Yonts satisfied the requirements of KRE 503(a)(2) & (4). In addition, the two (2) cases cited by the Defendant in an attempt to show that Mrs. Yonts is a representative of the Defendant and/or Mr. Yonts do not support the Defendant's argument.

In *The St. Luke Hospital v. Kopowski*, the Kentucky Supreme Court addressed whether the attorney client privilege protected two (2) nurses' communications to the hospital's risk management officer about the death of a patient, after the hospital's attorney had instructed the hospital's risk management officer to conduct the interviews. *The St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 775-76 (Ky. 2005). The Court held that the communications made to the risk management officer, as an agent of the hospital attorney, were made directly to the employee of the attorney "for the purpose of facilitating the rendition of professional legal services to the hospital, and intended to remain confidential from those to whom disclosure would not further the rendition of professional legal services;" therefore, the communications were protected under the attorney-client privilege. *Id.* at 776.

Here, the Defendant claims that Mrs. Yonts was in the same position as the risk management officer in *Kopowski*. However, in the instant matter, in contrast to *Kopowski*, Mrs. Yonts was in no way "employed" for the purpose of facilitating a professional service in this

matter.  Accordingly, the holding in *Kopowski* does not support the protection of the communications made between Mrs. Yonts and the Defendant.

The Defendant also cites the Kentucky Court of Appeals case of *TARC v. Vinson*, where the Kentucky Court of Appeals held that the *work product rule* did not exclude the testimony of a private investigator hired by TARC. *TARC v. Vinson*, 703 S.W.2d 482, 486 (Ky. Ct. App. 1985)(emphasis added).  In reaching this decision that the work product rule did ***not*** preclude the admission of the testimony of the investigator as well as his photographs and documents prepared in anticipation for trial, the Court held that by the time the trial started it was more important in that situation to have all the facts before the jury. *Id.*  In addition, the Court noted that the "work product immunity protects only the documents themselves and not the underlying facts...[f]*or this reason, the court did not err in requiring TARC's investigator to testify at trial*." *Id.* (emphasis added).

Here, the Defendant wishes to compare Mrs. Yonts to the investigator in TARC, arguing that she was a representative of the Defendant and acting at the direction of the attorneys.  Aside from offering no evidence to support this assertion, the Defendant has also misapplied the holding in *TARC* to the instant case.  In *TARC*, in the contrast to this matter, the Court addressed the admissions of documents under the *work product rule*, not the testimony of a witness under the attorney-client privilege.  Further, in *TARC* the investigators were *employed* by TARC in that matter, yet the Court still permitted the documents to come into evidence as well as the testimony of the investigator. *Id.* Accordingly, the holding in *TARC* does not support the protection of the communications made between Mrs. Yonts and the Defendant, and therefore, the Defendant has not met his burden in proving that the attorney-client privilege exists as to the

communications between the Defendant and Mrs. Yonts.

The Defendant also objects to producing documents referenced in the subpoena, claiming that they are "privileged and protected."  The Court will assume that the Defendant meant that these documents are protected under the work product rule.  The documents referenced in the subpoena include insurance documents, credit card statements and identification cards registered to the Defendant that were in effect on November 10, 2005 and/or mailed to them through December 31, 2005, and are in the possession of Mr. & Mrs. Yonts.[1]

"The 'work product' rule is a discovery rule that applies *only* to the work product of a party's attorney or representative. CR 26.02(3)(a)." *Hart v. Com.*,116 S.W.3d 481, 485 (Ky. 2003)(emphasis added).  "The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997).

Here, the documents sought by the Plaintiff were not prepared by the Defendant in anticipation of litigation, but were in existence before the accident took place and/or would have been sent to Mr. & Mrs. Yonts' home despite the accident.  Accordingly, these documents are not "privileged and protected" under the work product rule, and therefore, the Defendant shall turn these requested documents over to the Plaintiff at the time of the deposition.

Accordingly, based on the facts presently before the Court, the attorney-client privilege does not preclude the depositions of Mr. & Mrs. Yonts, as the Defendant has not met his burden in proving that the communications made between he and Mr. Yonts are protected under the attorney-client privilege, and Mrs. Yonts is not a representative of the Defendant and/or Mr.

---

[1] The Defendant has noted that the insurance information is not protected, and has forwarded that information to Plaintiff's counsel.

Yonts under KRE 503.  Further, the documents sought by the Plaintiff are not protected under the work-product rule, and therefore, the Plaintiff is entitled to receive copies of those documents.

### 2. *Shelton Test*

The Defendant contends that the "*Shelton* test" also precludes the deposition of Mr. & Mrs. Yonts because an attorney representing an adverse party cannot be deposed.  The Defendant cites the Sixth Circuit Court of Appeals case of *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, noting that the Court in that opinion adopted the "*Shelton* test" to determine whether or not discovery may be taken from opposing counsel. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002).  In *Nationwide*, the Court, in citing *Shelton*, stated that discovery from opposing counsel is "'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.' *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986) (citation omitted)."  In *McMurry v. Eckert*, the Kentucky Supreme Court also adopted the test set out in *Shelton*, stating "'[the] practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without the fear of being interrogated by his or her opponent.'" *McMurry v. Eckert*, 833 S.W.2d 828, 830 (Ky. 1992)(quoting *Shelton* at 1327).

The Court in *Nationwide* affirmed the district court's decision in denying the defendant's motion for discovery of the plaintiff's counsel because "'much of the information sought is not relevant in determining whether evident bias permeated the arbitration process.'" *Id.* at 629

8

(quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 90 F. Supp.2d 893, 904 (S.D. Ohio 2000)).

In *Nationwide*, the Court also noted that there was no evidence put forth by the defendant to

suggest that the attorneys who the defendant sought to depose were not opposing counsel. *Id.*

       Here, in contrast to *Nationwide*, it is not certain whether or not Mr. Yonts is a counsel to

the Defendant in this matter.  As determined *supra*, the Defendant has not met his burden in

proving the existence of attorney-client privilege between he and Mr. Yonts.  Even assuming that

Mr. Yonts is counsel to the Defendant, the Court cannot state with certainty whether the

deposition of Mr. Yonts would in anyway detract from the quality of the representation of the

Defendant.  The Defendant's assertion that "Brent Yonts had nothing to do with the lawsuit

except to represent his client" is misleading because Mr. Yonts is not only an attorney, but he is

also the father of the Defendant, and as asserted by the Plaintiff, he may have knowledge of facts

outside the legal parameters of this case that are related to the alleged liability.

       The Court can see the relevance in permitting the deposition of Mr. Yonts in this matter.

At the same time, the Court can understand that Mr. Yonts may have participated in the legal

undertakings of this case not as a father, but as a member of the Defendant's legal team.

Nonetheless, the Court believes that the Plaintiff may depose Mr. Yonts.  As a father to the

Defendant, Mr. Yonts may have knowledge of certain facts outside the scope of legal

representation that may be related to the case.  During the deposition, if the Defendant's counsel

feels that a question asked by Plaintiff's counsel relates to the legal representation of the

Defendant and the proper foundation to support legal representation has been established, the

Defendant's counsel may object to the question.  In regards to Mrs. Yonts, as determined *supra*,

she is in no way a representative of the Defendant and/or Mr. Yonts under KRE 503, and the

Court can state with certainty that she is not a counsel and/or employed by counsel in this matter. Accordingly, Mrs. Yonts may be deposed without restrictions.[2]

## CONCLUSION

**IT IS SO ORDERED:**

For the foregoing reasons, the Defendant's Motions to Quash and/or a Protective Order are **DENIED**, and the depositions of Mr. Brent Yonts and Mrs. Janice Yonts may take place, and the Plaintiff is entitled to the documents he has requested from the Defendant.

---

[2]As noted *supra*, " [c]ommunications that occur in confidence between an attorney and a client lose their confidentiality as well as the protection of the attorney-client privilege if the client voluntarily discloses them to a third party. *Lexington Public Library v. Clark, Ky.*, 90 S.W.3d 53, 61 (2002). Additionally, the attorney-client privilege does not shield from disclosure any statements made by the client to his/her attorney in the presence of a third party. *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998); *see also U.S. v. Hodges*, 448 F.2d 1309, 1313 n. 5 (6th Cir. 1971)." As such, any communications made by the Defendant to Mrs. Yonts, and/or any communications made by the Defendant to Mr. Yonts in the presence of Mrs. Yonts and/or another person not counsel to the Defendant are not protected by the attorney-client privilege.