UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-173-R

JOSEPH SHAHEEN,
Ancillary Administrator of the Estate
of NADIA SHAHEEN, deceased                                              PLAINTIFF

v.

BURGESS HARRISON YONTS, ET AL                                       DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on twenty-eight separate Motions for Summary

Judgment involving sixty-two individual Defendants (Docket #494-501, 503-504, 506-516, 519-

522, 524, 526-527).  Each motion raises similar issues of fact and law.  Plaintiff Joseph Shaheen

has responded (Docket #534).  Defendants have replied (Docket #536-555, 557-562).  This

matter is now ripe for adjudication.  For the reasons that follow, Defendants' Motions for

Summary Judgment are GRANTED.

## BACKGROUND

This case concerns the death of Nadia Shaheen ("Shaheen"), the mother of the Plaintiff,

Joseph Shaheen, who is the administrator of Shaheen's estate.  It is alleged that in the early hours

of November 11, 2005, Defendant Burgess Harrison Yonts's ("Yonts") car struck Shaheen,

causing her death. Plaintiff contends that Yonts consumed alcohol at Nick's Family Sport's Pub

and at the Lambda Chi Alpha Fraternity House on the campus of Murray State University prior

to the accident, and that Yonts was legally intoxicated when his car struck Shaheen.  The

defendants in this matter were members of the Lambda Chi Alpha fraternity at the time of the

accident.  Yonts was also a member of the fraternity at that time.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

Plaintiff alleges that Yonts consumed alcohol while attending the Lambda Chi Alpha party. In support of this allegation, Plaintiff has submitted deposition testimony from a witness

2

who observed Yonts at the party carrying a bottle of Mickey's malt liquor during most of the night, and a witness who saw Yont's drop a bottle of Mickey's.  Another witness observed Yonts go to his parked car and either put something into, or take something out of his car, which Plaintiff argues was a commonplace method for fraternity members who did not live at the house to store their beer during parties.

Given this evidence, a reasonable jury could conclude that Yonts consumed alcohol while attending a party hosted by Lambda Chi Alpha.  However, there is no evidence that would allow a jury to find that any Defendant provided Yonts with the alcohol he consumed.  The issue before the Court is whether a social host may be liable for the injuries caused by the intoxication of an underage guest when the social host did not provide alcohol to the guest.

## I.  Common law negligence

Plaintiff argues that Defendants were negligent in allowing Yonts, a minor, to consume alcohol on Defendants' property.  "In order to state a cause of action based on negligence, a plaintiff must establish a duty on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff."  *Lewis v. B & R Corporation*,  56 S.W.3d 432, 436-37 (Ky. App. 2001).  "The question of duty presents an issue of law."  *Mullins v. Commonwealth Life Insurance Co.*, 8369 S.W.2d 245, 248 (Ky. 1992).  When examining this question, the Court must "determine whether a duty is owed, and consideration must be given to public policy, statutory and common law theories in order to determine whether a duty existed in a particular situation."  *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005).

There is no Kentucky case law concerning the liability of social hosts to a third party for

the negligent act of an intoxicated guest. *Estate of Vosnick v. RRJC, Inc.,* 225 F. Supp. 2d 737, 740 (E.D.K.Y. 2002). The one federal court to examine this issue predicted that Kentucky would recognize a cause of action against social hosts, but only for serving alcohol to minors. *Id.* at 742. For the purposes of this opinion, the Court assumes, without deciding, that Kentucky would recognize a cause of action against a social host for serving alcohol to a minor. The Court will also assume, without deciding, that each individual defendant is liable for the collective actions of Lambda Chi Alpha fraternity. The issue of individual defendant liability for the collective action of the fraternity would be deserving of a detailed, fact specific analysis. However, the Court has made this assumption because it has decided the case on other grounds.

While there is no Kentucky case law concerning social host liability, there is case law covering a dram shop's potential liability for the intoxication of its customers. Care must be used when applying the principles of dram shop liability in the social host context, because there is a difference in the standard of care. *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 335 (Ky. 1987). However, in the absence of any controlling authority concerning social host liability, such an analysis is useful for the Courts's examination of social host liability. *See Estate of Vosnick v. RRJC, Inc.,* 225 F. Supp. 2d 737, 740 (E.D.K.Y. 2002) (finding an inspection of Kentucky dram shop law instructive in predicting how Kentucky courts would analyze social host liability).

The first step in the Court's analysis is to examine K.R.S. 413.241. In this statute, the Kentucky General Assembly found that "the consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury . . . inflicted by an intoxicated person upon himself or another person." K.R.S. 413.241(1).

4

Reading K.R.S. 413.241(1) in isolation, it would appear that all liability based on the consumption of alcohol would be limited to the intoxicated individual.  However, when Kentucky courts have examined the entirety of K.R.S. 413.241, certain exceptions have been found to the legislative assignment of proximate causation.  Under K.R.S. 413.241(2) a dram shop that sells alcohol to an individual that is already intoxicated may be liable, despite the legislature's declaration that the selling of alcohol is not the proximate cause of any injuries. *DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952, 957 (Ky. 1999).  Subsection (2) also "imputes liability to a dram shop for the sale or service of alcohol to a minor." *Sixty-Eight Liquors, Inc. V. Colvin*, 118 S.W.3d 171, 175 (Ky. 2003).

Therefore, as an initial matter, the Court's analysis of Kentucky social host liability begins with the policy that the intoxicated individual is the party who bears the responsibility for the injuries he causes. *Estate of Vosnick v. RRJC, Inc.,* 225 F. Supp. 2d 737, 742 (E.D.K.Y. 2002) ("Clearly there is a general reluctance to recognize liability beyond that of the immediate tortfeasor.").  The exceptions to this assignment of responsibility have been limited, so far, to situations where alcohol is either sold to a person who is already intoxicated or sold to a minor.

K.R.S. 413.241(2) is not the only statute that creates liability for a dram shop for selling alcohol to intoxicated persons or minors.  A retailer may be criminally liable for selling, giving away, or delivering any alcoholic beverage to a minor or a person under the influence of alcoholic beverages.  K.R.S. 244.080.

In *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, the Kentucky Supreme Court held that Kentucky common law recognized dram shop liability.  736 S.W.2d 3258 (Ky. 1987).  Although the decision concerned common law negligence, the *Grayson* court

relied heavily on the statutory standards imposed on dram shops. The statute that the court used to define the common law standard of care was K.R.S. 244.080, which forbids dram shops from selling alcohol to certain classes of customers. *Grayson*, 736 S.W.2d at 333.  "By enacting K.R.S. 244.080 the General Assembly has defined a standard of conduct against which negligence can and should be measured." *Id.* at 334.   The statutory standard of care was important to the determination of the dram shop's common law duty.  This is demonstrated by the fact that the court explicitly stated that the *Grayson* decision was not intended to cover social hosts, because K.R.S. 244.080 does not apply to social hosts.  *Id.* at 335.

The Kentucky Supreme Court has also relied on K.R.S. 244.080 to find that dram shops are potentially liable for selling alcohol to minors.  *Pike v. George*, 434 S.W.2d 626 (Ky. 1968). The court was "unwilling to say that there are no circumstances under which a licensee who sells alcoholic beverages may be held responsible in damages proximately resulting from the violation of K.R.S. 244.080." *Id.* at 629.

However, K.R.S. 244.080 is not the only statute that acts to prevent minors from obtaining alcoholic beverages.  K.R.S. 530.070 states that "a person is guilty of unlawful transaction with a minor in the third degree when . . . acting other than as a retail licensee, he knowingly sells, gives, purchases or procures any alcoholic or malt beverage . . . for a minor."

Unlike K.R.S. 244.080, which only applies to retailers, K.R.S. 530.070 applies to social hosts. "K.R.S. 244.080 appears to be directed more toward retail businesses, while K.R.S. 530.070 appears to be directed to toward private persons acting in their private capacities." Op. Ky. Att'y Gen. 52 (1991).

Despite the fact that the statutes are designed to impose responsibility on different classes

of people, they do have one factor in common. Both statutes impose liability on the persons who supplied alcohol to the minor.  As stated above, a retail licensee may not sell, give away, or deliver alcohol to a minor.  K.R.S. 244.080.  A person who is not a retail licensee may not sell, give, purchase or procure alcohol for a minor.  K.R.S. 530.070(1).  Additionally, it is also forbidden to aid or assist a minor in purchasing or having delivered or served any alcoholic beverage.  K.R.S. 244.085(3).  All of these prohibitions apply to individuals who in some way furnish alcohol to a minor, or provide active assistance to the minor in obtaining possession of alcohol.

By examining the statutory duties applicable to a social host who permits a minor to consume alcohol, the Court predicts that under Kentucky law, liability would only be imposed if the host in some way furnished the alcohol that the minor consumed.  To arrive at this conclusion, the Court relied on the statutory assignment of proximate causation found in K.R.S. 413.241, which places culpability primarily on the intoxicated individual.  *Estate of Vosnick v. RRJC, Inc.*, 225 F. Supp. 2d 737, 742 (E.D.K.Y. 2002).  To determine if Kentucky courts would find the current case to be an exception to the general principle of limiting responsibility to the intoxicated individual, the Court attempted to apply the principles set by Kentucky courts' dram shop liability jurisprudence, which uses statutory standards to define the scope of common law duties.  An examination of the relevant statutes leads the Court to conclude that Kentucky law would only recognize a cause of action by an injured third party if the social host served alcohol to a minor.  As there is no evidence that Defendants furnished alcohol to Yonts the night of the accident, Defendants are entitled to judgment as a matter of law on Plaintiff's common law negligence claim.  Merely hosting a party where attendees may bring alcohol is not enough to

impose liability on a social host.

## II. Negligence per se

In addition to Plaintiff's common law negligence claim, Plaintiff also alleges that Defendants were negligent per se.  However, as stated above, there is no evidence that Defendants provided Yonts with alcohol, so they cannot be liable for violating K.R.S. 244.085(3) or K.R.S. 530.070(1).

The final statute that Plaintiff attempts to use as a basis to find Defendants negligent per se is K.R.S. 530.070(2), which states that "a person is guilty of unlawful transaction with a minor in the third degree when . . . he knowingly induces, assists, or causes a minor to engage in any other criminal activity."  Plaintiff appears to argue that Defendants knowingly induced, assisted, or caused Yonts to violate K.R.S. 244.085(3), which forbids a minor from possessing alcohol for his own use.  The only evidence before the Court is that Yonts consumed alcohol before he arrived at the party and he was seen possessing alcohol at the party.  There is no evidence that any Defendant acted to induce, assist, or cause Yonts to engage in any forbidden conduct.

## III.  Affirmative duty to control

Finally, Plaintiff argues that Defendants negligently failed to control Yonts's consumption of alcohol while Yonts was attending the party on Defendants' property.  This is a separate basis for liability than social host liability.  In the case of social host responsibility, the social host is liable for the affirmative act of serving alcohol to a minor.  Under this other theory of liability, however, the host is liable for his failure to perform the affirmative act of controlling the guest's dangerous conduct.

8

Generally, there is no affirmative duty to control another person's conduct to prevent him from harming third persons. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005). "A duty can, however, arise to exercise reasonable care to prevent harm by controlling a third persons conduct where . . .  A special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." *Id.*  One such special relationship exists between an owner of land and the person using the land. *Id.* at 850 (citing Restatement (Second) of Torts § 318 (1965)).

"There are two distinct types of claims based upon a defendant's special relationship with the person causing the harm," which can be classified as "negligent failure to warn" and "negligent failure to control." *Id.* at 850.  In this case, Plaintiff argues that Defendants negligently failed to control Yonts's behavior.

In a negligent failure to control claim a defendant's "ability to control the person causing the harm assumes primary importance." *Id.* at 851.  "[T]he defendant's ability to control the person who caused the harm must be real and not fictional and, if exercised, would meaningfully reduce the risk of the harm that actually occurred." *Id.*  "A 'real' ability to control necessarily includes some sort of leverage, such as the theat of involuntary commitment, parole revocation, or loss of livelihood provided by an employment relationship." *Id.* at 853.

However, being the host of a party does not give the host sufficient control over a guest's conduct to be liable for a failure to control.  In a case cited by the Kentucky Supreme Court, the Supreme Court of Texas "held that the social host had no duty to prevent their guest from consuming alcohol or later driving, in part because the hosts had no means of effective control over the guest." *Id.* (citing *Graff v. Beard,* 858 S.W.2d 918, 921-922 (Tex. 1993)).

9

The lack of effective means of control is demonstrated in the Texas Supreme Court's discussion of what actions by the host would be required to discharge the host's duty to prevent a guest from driving while intoxicated.  *Graff*, 858 S.W.2d at 921.  "Would a simple request not to drive suffice?  Or is more required?  Is the host required to physically restrain the guests, take their car keys, or disable their vehicles?"  *Id.*

Therefore, Defendants did not have an affirmative duty to control Yonts the night of the party in their capacity as social hosts.  The fact that Yonts was a member of Defendants' fraternity does not alter this analysis.  Yonts's status as a member of Lambda Chi Alpha is not a special relationship that would trigger an independent duty for Defendants to control his behavior.  Nor does the relationship give Defendants, through threat of expulsion from the fraternity, sufficient leverage to effectively control Yonts's conduct the night of the party.

## CONCLUSION

For the above stated reasons, Defendants' Motions for Summary Judgment are GRANTED.

An appropriate order shall issue.