UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06-CV-00173-TBR

JOSEPH SHAHEEN,                                                    PLAINTIFF
Ancillary Administrator of the Estate of
NADIA SHAHEEN, deceased

v.

BURGESS HARRISON YONTS, et al.                                    DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Danny Patterson's Motion for Summary

Judgment (Docket #649), Defendant Lambda Chi Alpha House Corporation's Motion for

Summary Judgment (Docket #650), and Defendant Lambda Chi Alpha Fraternity, Inc.'s Motion

for Summary Judgment (Docket #651).  Each motion raises similar issues of fact and law.

Plaintiff has responded (Docket #662, 663, 666) and Defendants have replied (Docket #679, 680,

681).  Plaintiff has also filed a surreply (Docket #682).  This matter is now ripe for adjudication.

For the reasons that follow, Defendants' Motions for Summary Judgment are GRANTED.

## BACKGROUND

This case concerns the death of Nadia Shaheen ("Shaheen"), the mother of Plaintiff

Joseph Shaheen, f/k/a Abdalla El Bannan, who is the administrator of Shaheen's estate.  In the

early hours of November 11, 2005, Defendant Burgess Harrison Yonts's ("Yonts") car struck

Shaheen, causing her death.  Prior to the accident, Yonts consumed alcohol at Nick's Family

Sports Pub and at the Lambda Chi Alpha Fraternity House on the campus of Murray State

University.  Yonts was legally intoxicated when his car struck Shaheen.

Defendant Lambda Chi Alpha Fraternity, Inc. (the "Fraternity") is a national fraternity

organization.  The Fraternity operates local fraternity chapters nationwide, including the Lambda

Eta Chapter at Murray State University, of which Yonts was a member.  Defendant Lambda Chi

Alpha House Corporation (the "House Corporation") is a nonprofit organization that serves as a

holding company for the Fraternity's property.  The House Corporation owns the Lambda Eta

Chapter property located at Murray State University.  The House Corporation leases the property

space to fraternity members.  Defendant Danny Patterson ("Patterson") served as the volunteer

alumni advisor to the Lambda Eta Chapter of the Fraternity in November 2005.

### STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  In

determining whether summary judgment is appropriate, a court must resolve all ambiguities and

draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether

the party bearing the burden of proof has presented a jury question as to each element in the

case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a

mere scintilla of evidence in support of his position; the plaintiff must present evidence on which

the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for

summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly

2

supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I.  Danny Patterson

**A.  Negligent Supervision**

In a previous decision, this Court concluded that the individual fraternity members who were present at the Lambda Eta Chapter party on November 10-11, 2005 had no affirmative duty as social hosts to control Yonts's behavior.  Therefore, they could not be held liable for common law negligence under Kentucky law.  Defendant Danny Patterson ("Patterson") argues that because he was not present at the party and did not serve alcohol to Yonts, he similarly owed no duty to control Yonts's conduct.

Plaintiff responds that this matter is distinguishable from the Court's earlier decision in that Patterson voluntarily assumed a duty to monitor and control the conduct of the Lambda Eta Chapter and its members.  Therefore, the basis of liability is not a duty owed by Patterson as a social host; rather, it is a supervisory duty owed by Patterson to report to the Fraternity any violations of fraternity law or policy.  Plaintiff alleges that Patterson breached his duty when he took no action to enforce the policies of the Fraternity or report violations.  By neglecting his duties as an alumni advisor, Plaintiff argues that Patterson facilitated an atmosphere of unrestrained alcohol consumption at the Lambda Eta Chapter that led to foreseeable harm to Shaheen.

"In order to state a cause of action based on negligence, a plaintiff must establish a duty

on the defendant, a breach of the duty, and a causal connection between the breach of the duty and an injury suffered by the plaintiff." *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436-37 (Ky. Ct. App. 2001). "The question of duty presents an issue of law." *Mullins v. Commonwealth Life Insurance Co.*, 839 S.W.2d 245, 248 (Ky. 1992). When examining this question, the Court must "determine whether a duty is owed, and consideration must be given to public policy, statutory and common law theories in order to determine whether a duty existed in a particular situation." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005).

Under Kentucky law, "a breach of a voluntarily assumed duty can give rise to tort liability." *Id.* at 847. While there is no Kentucky case law concerning tort liability for fraternity advisors, the Kentucky Supreme Court has established a framework for determining whether a party has voluntarily assumed a duty. *See Grand Aerie Fraternal Order v. Carneyhan*, 169 S.W.3d 840 (Ky. 2005). As a threshold matter, the Court must first determine "whether the putative tortfeasor has actually and specifically undertaken to render the services allegedly performed without reasonable care." *Id.* at 847 (internal citations omitted). The tortfeasor must have knowledge that "the undertaking serves to reduce the risk of harm to another or circumstances that would lead a reasonable person to the same conclusion . . . ." *Id.* (internal citations omitted).

Plaintiff points to the Fraternity's constitution and statutory code as evidence that Patterson knew that his role as alumni advisor, or "High Pi," required him to report fraternity law or policy violations to the Fraternity, thus reducing the risk of harm to third persons. Code IV-14 explains that the High Pi's main duties include serving as "chief judicial officer" of the

4

chapter, attending the majority of chapter meetings, and "report[ing] to the Grand High Pi any violation of the Laws or policies of the Fraternity within the Chapter."  Patterson testified that he was aware of his obligation to notify the Fraternity if he discovered that fraternity laws were being broken at fraternity parties.  However, Patterson also testified that he did not believe that he had a duty to enforce fraternity policy.

No where in the Fraternity constitution and statutory code does it state that the High Pi must monitor and control the activities of fraternity members.  Overall, the constitution and statutory code establishes a framework by which the individual fraternity members are to govern themselves through the appointment of officers, such as High Alpha, High Beta, High Gamma, etc.  These officers share responsibility in ensuring that their peers comply with fraternity law and policy.  As the High Rho Manual explains, "[t]he role as advisor is probably the most important aspect of the High Pi's job," not supervision.  The alumni advisor serves in a voluntary capacity and while the Fraternity relies on him to report violations of fraternity law or policy, the constitution and statutory code grants him no authority to enforce the fraternity laws or policies or sanction the Chapter or fraternity members.  Any exercise of enforcement, such as the suspension of a fraternity member or the revocation of a chapter's charter, rests exclusively with the Fraternity.  Given that the alumni advisor primarily serves an advisory role, and not a supervisory one, the Court finds that Patterson did not undertake a duty to affirmatively supervise the Lambda Eta Chapter.

Even if Patterson had undertaken such a duty, it does not follow that Patterson voluntarily assumed a duty to protect Shaheen. *Grand Aerie*, 169 S.W.3d at 848 n.2.  "Before such a voluntarily assumed duty can be found, one of three further preconditions must exist: (1)

5

the failure to exercise reasonable care in performing the undertaking must increase the risk of harm; (2) the duty undertaken must already be owed to the third party by another; or (3) the third person must rely on the undertaking." *Id.* (citing *Ostendorf v. Clark Equipment Company*, 122 S.W.3d 530, 538 (Ky. 2003); Restatement (Second) of Torts §324A (1965)). "[T]raditionally, the purpose of imposing liability upon a party who has assumed a duty to act is premised upon reliance." *Ostendorf v. Clark Equipment Company*, 122 S.W.3d 530, 538 (Ky. 2003).

Here, the party that relied on Patterson was the Fraternity since the Fraternity elected him to acts as a liaison between the Fraternity and its chapter members.  Therefore, either Patterson's alleged nonfeasance in failing to monitor and control the fraternity members, or his alleged misfeasance in failing to report violations and/or any violations he may have committed himself, would result in a breach of the duty he owed to the Fraternity.  However, as the Court will explain below, the Fraternity owed no duty to Shaheen.  Because the Fraternity owed no duty to Shaheen, it is irrelevant for the purposes of this action whether the Fraternity relied on a duty assumed by Patterson.  In other words, even if Patterson breached a duty he owed to the Fraternity, there was no increase in the risk of harm to Shaheen where the Fraternity had no duty to supervise the fraternity members.

**B.  Federal & Kentucky Volunteer Protection Acts**

Because the Court finds that Patterson was not negligent as a matter of law, it need not consider the applicability of either the Volunteer Protection Act of 1997 or Kentucky's Volunteer Protection Act.  *See* 42 U.S.C. §14501 et seq.; Ky. Rev. Stat. §411.200.

## II.  Lambda Chi Alpha Fraternity, Inc.

**A. Negligent Supervision**

### 1. Voluntary Assumption of a Duty

Defendant Lambda Chi Alpha Fraternity, Inc. contends that at no time did it voluntarily assume a duty to supervise the activities of the Lambda Eta Chapter members, including Yonts. Citing the Kentucky Supreme Court's decision in *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, the Fraternity argues that its constitution and statutory code, along with other materials distributed by it, demonstrate that the Fraternity did not undertake a duty to supervise its local chapter members.  169 S.W.3d 840 (Ky. 2005).  In response, Plaintiff seeks to distinguish *Grand Aerie*, arguing that the Lambda Eta Chapter and its members were under the complete control of the Fraternity, as evidenced by the very documents upon which the Fraternity relies in its motion for summary judgment.

Although the Court has already discussed the legal standard used to determine whether a voluntarily assumed duty has been undertaken, the Court finds it helpful to further expound upon the specific facts of *Grand Aerie* as they are fairly analogous in this instance.  *Grand Aerie* involved a national fraternal organization that was sued after one of its local chapters served alcohol to a minor who was subsequently killed in a single-vehicle automobile accident.  *Id.* at 843.  The plaintiffs asserted several causes of action against the fraternity, including negligent supervision based on the fraternity's voluntary assumption of a duty to supervise its local chapter.  *Id.* at 845-46.  As a threshold matter, the Kentucky Supreme Court considered "whether the putative tortfeasor has actually and specifically undertaken to render the services allegedly performed without reasonable care."  *Id.* at 847.  In making this assessment, the court looked to

7

the fraternity's organizational documents. *Id.* at 848.  The court concluded that the fraternity did not voluntarily undertake an affirmative duty to supervise the members of its local chapters where the language of the fraternity's constitution and statues articulated "a passive role, rather than the actively investigative role." *Id.* at 848.  Thus, the court in *Grand Aerie* held there can be no voluntary assumption of a duty where the organization does not impose upon itself a duty to supervise.

The Fraternity's constitution and statutory code establishes a framework for the structure and direction of its local chapters.  The Fraternity clearly exercises some supervision over its chapters.  For example, article IV, section 3 of the Fraternity's constitution provides that while individual chapters "are responsible for full implementation" of the Fraternity's operating standards, "[c]hapters will be evaluated regularly and will be subject to review by the General Fraternity" to ensure that each chapter is "in good standing with the General Fraternity."  At the same time, the constitution provides that each chapter is self-governed by its own members, enacts its own by-laws, prepares its own financial reports, and disciplines its own fraternity members.

In *Grand Aerie*, the court considered it significant that the fraternity could only revoke a local chapter's charter "upon good cause shown."  169 S.W.3d at 848.  This indicated to the court that the fraternity declined to adopt an "actively investigative role" in exercising its disciplinary authority.  *Id.*  The court similarly relied on a fraternity statute that expressly disclaimed supervision and control over operation of local chapters.  *Id.* at 847.

Here, the Fraternity has no statute disclaiming supervision and control of its chapters. However, the self-imposed requirements for revoking a local chapter's charter are similar to that

8

of the fraternity in *Grand Aerie*.  The Fraternity cannot revoke a chapter's charter until a series of investigations and hearings have taken place and the action is ratified by a three-fourths vote of either the General Assembly or a referendum vote of all the chapters.

The Fraternity also has a formal policy regarding alcoholic beverages.  The policy sets forth procedures for the chapters to follow to ensure that fraternity members safely and lawfully consume alcoholic beverages.  The policy declines to adopt a supervisory role by the Fraternity and expressly directs the chapter's officers, or executive committee, "to supervise the design and implementation of the Chapter's social program."

The structure of the Fraternity's organization, along with the Fraternity's restricted enforcement authority and alcohol policy, demonstrate that the Fraternity contemplated a passive role in the supervision of its chapters.  While the Fraternity may have assumed a greater supervisory role than the fraternity in *Grand Aerie*, its role was predominately passive.  Nothing in the record indicates to the Court that the Fraternity "actually and specifically" assumed a duty to supervise the local chapters, especially in regard to social programs expressly left to the design of the fraternity members themselves.  Therefore, the Court finds that at no time did the Fraternity voluntarily assume a duty to supervise the behavior of Yonts.

### 2. Universal Duty of Care

Under Kentucky law, "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injures."  *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987).  In *Grand Aerie*, the Kentucky Supreme Court considered whether this universal duty of care required a fraternity to control the activities of its local chapters.  169 S.W.3d at 848.  The court explained that generally

9

there is no affirmative duty to control another person's conduct to prevent him from harming third persons. *Id.* at 849. "A duty can, however, arise to exercise reasonable care to prevent harm by controlling a third person's conduct where . . . a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." *Id.* "There are two distinct types of claims based upon a defendant's special relationship with the person causing the harm," negligent failure to warn and negligent failure to control. *Id.* at 850. Here, the Fraternity argues that it had no special relationship with the Lambda Eta Chapter requiring it to control the behavior of Yonts.

To impose liability for negligent failure to control, the special relationship upon which liability is based must evidence an ability to control. *Id.* at 852. An ability to control must be "real," meaning that the person causing the harm has sufficient leverage to reduce the risk of harm, and the proper exercise of it must restrict the person's ability to cause the harm. *Id.* at 853. In *Grand Aerie*, the court reasoned that the only real method of control the fraternity had over its local chapter was the revocation of the chapter's charter. *Id.* Because this provided "no genuine leverage" over the chapter, it was not a real method of control. *Id.* "Moreover, the revocation of the charter would have produced an outcome completely unrelated to the harm that occurred, since [the local chapter's] association with the [fraternity] did not facilitate its ability to hold social functions and serve alcohol on its own leased premises." *Id.* Thus, the court concluded that the fraternity had no special relationship with its local chapter that could impose liability under Kentucky law because the fraternity had no ability to control the chapter. *Id.* at 854.

In this case, Plaintiff is correct that the Fraternity had more control over the behavior of

10

its chapter than the fraternity in *Grand Aerie*.  Unlike in *Grand Aerie*, here there is evidence that the Fraternity had various methods of control over the Lambda Eta Chapter and its members. For example, the Fraternity could at any time place the chapter on probation or could suspend or expel individual fraternity members following an initial determination for cause by the local chapter executive committee.  The Fraternity could also revoke the chapter's charter following an extensive investigatory process.

While these methods may have reduced the risk of harm, the Court is not convinced that the Fraternity's proper exercise of them would have restricted Yonts's ability to cause the harm in this case.  Yonts consumed his own alcohol at various locations throughout the evening of November 10.  He was not served alcohol at the fraternity chapter.  Even if the Fraternity had exercised the extent of its control by revoking the chapter's charter, that would not have restricted Yonts's behavior because Yonts was nonetheless free to drink on his own, as he did in this case.[1]

The Fraternity is a national organization with over 195 chapters nationwide.  It has a small office staff located in Indianapolis, Indiana.  Representatives of the Fraternity have no duty, nor are they actually able, to oversee the day-to-day happenings of each chapter.  As the court in *Grand Aerie* recognized,

> National organizations do not have the ability to monitor the activities of their
> respective chapters which would justify imposing the duty [plaintiff] seeks.  The

---

[1]Yonts testified in his deposition that he would have listened had the Fraternity informed him that he could be expelled if he drove after drinking at a fraternity party.  The Court believes that Yonts would have listened; the Court is not convinced that the information would have altered Yonts's behavior.

11

> national organization in fraternal groups has only the power to discipline an errant
>
> chapter after the fact.  It does not possess the resources to monitor the activities of
>
> its chapters contemporaneously with the event.

169 S.W.3d at 854 (quoting *Alumni Ass'n v. Sullivan*, 572 A.2d 1209, 1213 (Pa. 1990)).

The key to establishing a special relationship is that "'the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm.'"  169 S.W.3d at 850 (quoting *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001)).  The Fraternity was not in the best position to protect against the harm to Shaheen because the Fraternity had no actual ability to control Yonts's behavior.  Therefore, the Court finds that no special relationship existed between the Fraternity and its chapter giving rise to a duty to exercise reasonable care to control Yonts.

**B.  Negligence Per Se under KRS 530.070 and 244.085**

Plaintiff alleges that the Fraternity is negligent per se for violating Kentucky Revised Statutes (KRS) §§ 530.070(1)(b) and 244.085(3).[2]  Both statutes impose liability on persons who assist minors in obtaining alcoholic beverages.  The Fraternity contends that these claims must fail as a matter of law because neither statute was intended to protect third parties such as Shaheen.

Under Kentucky law, the violation of a statute is a breach of a duty that may constitute negligence per se.  *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. Ct. App. 1997) (citing

---

[2]KRS 446.070, in conjunction with sections 530.070(1)(b) and 244.085(3), authorizes a private liability cause of action.  KRS 446.070 provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."

*Britton v. Wooten*, Ky., 817 S.W.2d 443 (Ky. 1991)). "It is not true, however, that violation of a statute or regulation necessarily implies negligence.  In order for a violation to become negligence per se, the plaintiff must be a member of the class of persons intended to be protected by the regulation, and the injury suffered must be an event which the regulation was designed to prevent.  Only when both requirements are affirmatively demonstrated is negligence per se established with the applicable regulation or statute defining the relevant standard of care." *Id.* (internal citations omitted).

KRS 530.070(1)(b) states that "[a] person is guilty of unlawful transaction with a minor in the third degree when: . . . He knowingly induces, assists, or causes a minor to engage in any other criminal activity."  This statute refers to "private persons acting in their private capacities." Op. Ky. Att'y Gen. 52 (1991).  KRS 244.085(3) provides, in pertinent part, that "[n]o person shall aid or assist any person under 21 years of age in purchasing or having delivered or served to him or her any alcoholic beverages."  KRS 224.085(3) refers to "retail delivery and service and [is] not intended to apply to a social host's service of a guest." *Dierig v. Shaya, Inc.*, 2003 WL 22319434 *2 (Ky. Ct. App. 2003).

Presumably, Shaheen is one of the persons intended to be protected by KRS 224.085(3). The Fraternity cites no Kentucky case law or legislative history to the contrary.  In any event, the Court need not determine whether Shaheen was a member of the class of persons intended to be protected by KRS 224.085, because it is clear from the record that KRS 224.085(3) was not designed to prevent the tragedy that befell Shaheen.  The Fraternity is not a retail establishment, nor did it serve Yonts any alcohol.  Furthermore, even if social host liability somehow extended to the Fraternity, KRS 244.058(3) would still not apply. *See Dierig v. Shaya, Inc.*, 2003 WL

13

22319434 (Ky. Ct. App. 2003).  Therefore, the Court finds that the Fraternity did not assist

Yonts in obtaining alcohol in violation of KRS 244.085(3).

Because KRS 530.070(1)(b) predicates liability on Yonts's having obtained alcohol from

the Fraternity in violation of KRS 244.085(3), there can be no liability where the Fraternity did

not violate KRS 244.085(3).  Therefore, the Court finds that Plaintiff's negligence per se claims

must be dismissed as a matter of law.[3]

### C.  Vicarious Liability for Acts of Danny Patterson

#### 1. Generally

Plaintiff alleges multiple theories of vicarious liability against the Fraternity for the

alleged negligence of Defendant Danny Patterson, including actual agency, apparent agency,

respondeat superior, and equitable estoppel.  The thrust of Plaintiff's allegations is that because

Patterson was a representative of the Fraternity, the Fraternity is liable for Patterson's failure to

supervise the fraternity party held on November 10.  In its motion for summary judgment, the

Fraternity addresses each of these theories independently, but essentially argues that Patterson

was not a representative of the Fraternity because he was an unpaid volunteer.  The Fraternity

also argues that it cannot be held vicariously liable for the acts of Patterson because Patterson

was not negligent.

"Vicarious liability, sometimes referred to as the doctrine of respondeat superior, is not

predicated upon a tortious act of the employer but upon the imputation to the employer of a

tortious act of the employee by considerations of public policy and the necessity for holding a

---

[3]Similar claims were raised against Danny Patterson in Plaintiff's Amended Complaint, however neither party addressed them in their motions for summary judgment.  The Court's reasoning here would likewise extend to Danny Patterson's alleged liability.

responsible person liable for the acts done by others in the prosecution of his business, as well as for placing on employers an incentive to hire only careful employees." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005) (quoting *American Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002)).  No theory of vicarious liability can be imputed where the underlying tortfeasor is not liable.  It would be inconsistent with the principles of vicarious liability to find the Fraternity liable for acts that the Court has already determined Patterson was not himself liable for as a matter of law.  Therefore, the Court finds that the Fraternity is not vicariously liable for the alleged acts of Danny Patterson.

### 2. Joint Venture

In his amended complaint, Plaintiff alleges that the Fraternity entered into a joint venture with Danny Patterson such that the Fraternity is liable for the negligence of Patterson.  The Fraternity argues that because there is was no agreement between the Fraternity and Patterson, there can be no joint venture liability as a matter of law.  Tellingly, Plaintiff failed to address the issue of joint venture in his response to the Fraternity's motion for summary judgment.

A joint venture is "a business arrangement intended to carry out a single venture for profit." *Roethke v. Sanger*, 68 S.W.3d 352, 365 (Ky. 2001) (quoting Am.Jur.2d Joint Ventures § 1 (1994)) (Wintersheimer, J., dissenting).  Here, there was no business arrangement between the Fraternity and Patterson.  Patterson was an unpaid volunteer elected to the position of alumni advisor by the Fraternity.  Furthermore, the Fraternity is a non-profit organization.  Therefore, any liability under a theory of joint venture is inapplicable to both the Fraternity and Danny Patterson.

### D.  Vicarious Liability for Acts of House Corporation

15

For the reasons explained below, the Court finds that the Housing Corporation is not liable as a matter of law for the behavior of Yonts.  Vicarious liability cannot be imputed where the underlying tortfeasor is not liable.  Therefore, the Court finds that the Fraternity is not vicariously liable for the acts of the Housing Corporation.

### E.  Vicarious Liability for Lambda Eta Chapter

Plaintiff argues that the Fraternity is vicariously liable for the tortious conduct of the Lambda Eta Chapter.  First, the Court is not convinced that the Lambda Eta Chapter is a legal entity capable of being sued under Kentucky law.  *See Future Federal Sav. & Loan Ass'n v. Daunhauer*, 687 S.W.2d 871, 873 (Ky. Ct. App. 1985) (finding that an unincorporated association is not a legal entity); *Prime v. Beta Gamma Chapter of Pi Kappa Alpha*, 47 P.3d 402, 405 (Kan. 2002) (finding that because fraternity chapter was never incorporated, it is not a legal entity capable of being sued).  Even if the Chapter is capable of being sued, Plaintiff has stated no basis of liability upon which the Chapter is to be held liable.  Plaintiff's response brief states that the Fraternity is "vicariously liable for the torts of the Chapter," without explaining what torts the Plaintiff has in mind.  The Court's March 3, 2008 Order held that the Lambda Eta Chapter, represented collectively by the individual fraternity member defendants, could not be held liable under a theory of social host liability.  The Court concludes that the Fraternity cannot be held vicariously liable for the actions of the Lambda Eta Chapter when the Chapter itself is not liable as a social host.

### III. Lambda Chi Alpha House Corporation

### A.  Negligence

As previously explained, generally there is no duty to control another person's conduct to

16

prevent him from harming third persons under Kentucky law.  However, a duty to control another's conduct can arise where a special relationship exists.  Kentucky law recognizes a special relationship between a landowner and licensee.  *Grand Aerie*, 169 S.W.3d at 850.

Plaintiff alleges that Defendant House Corporation owed a duty to control the behavior of Yonts because the House Corporation owned the property where the fraternity party took place on November 10 and Yonts was a licensee.[4]  The House Corporation argues that it had no leverage by which it could exercise control over Yonts's behavior.  Therefore, it had no real ability to control Yonts's behavior and cannot be held liable for negligently failing to control Yonts.

Plaintiff relies on Restatement Second of Torts §318, which the court in *Grand Aerie* adopted in determining that a special relationship exists between a landowner and licensee.  169 S.W.3d at 850.  Section 318 states:

> If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and(b) knows or should

---

[4] A licensee is one who is present on the property of another "(a) as a matter of privilege by virtue of the possessor's consent, or (b) a gratuitous licensee, for one's own convenience, pleasure or benefit pursuant to permission or acquiescence, express or implied, and without interest, profit or benefit to the possessor of the place." *City of Madisonville v. Poole*, 249 S.W.2d 133, 134 (Ky. 1952).  As a member of Lambda Chi Alpha, Yonts had permission from the Housing Corporation to come and go from the property at any time.

know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 318 (1965).  The handful of Kentucky cases that have discussed §318 indicate that liability attaches only where the landowner knew or should have known that he had the ability to control the licensee's conduct and should have known of the necessity and opportunity for exercising such control.  *See, e.g., Scifres v. Kraft*, 916 S.W.2d 779, 782 (Ky. Ct. App. 1996); *Grimes v. Hettinger*, 566 S.W.2d 769, 774 (Ky. Ct. App. 1978).

The record demonstrates that the House Corporation knew parties regularly took place on the property on Thursday nights.  The Housing Corporation was also aware that underage drinking occurred on the premises.  In the past, the Housing Corporation had held meetings warning the fraternity members against excessive drinking on the property.  The last such meeting occurred in September 2005 when the Housing Corporation, through its board members, reminded the fraternity members to behave and limit their drinking in front of alumni during homecoming weekend.  However, none of this evidence establishes that the Housing Corporation had the ability to control the conduct of its licensees.

Other than holding meetings, the Housing Corporation had no real ability to control the behavior of Yonts.  Yonts did not live on the property.  Therefore, the Housing Corporation had no leverage by which to sanction his behavior.  Even if the Housing Corporation had exercised the extent of its control over the property by removing all the fraternity members from the premises, that would not have prevented the fraternity members from holding social functions elsewhere.  *See Grand Aerie*, 169 S.W.3d at 852.  Moreover, alcohol was not served to Yonts on the premises on November 10, so there is no basis to conclude that had the Housing Corporation removed the fraternity members from the property then Yonts's behavior would have changed

18

and no harm would have come to Shaheen.  For these reasons, the Court finds that the Housing Corporation is not liable for negligently failing to control the behavior of Yonts.

**B.  Negligence Per Se under KRS 530.070 and 244.085**

As explained above, KRS 224.085(3) refers to "retail delivery and service and [is] not intended to apply to a social host's service of a guest."  *Dierig v. Shaya, Inc*., 2003 WL 22319434 *2 (Ky. Ct. App. 2003).  Because the Housing Corporation is not a retail establishment and did not serve alcohol to Yonts, there can be liability against the Housing Corporation for violating  KRS 224.085(3).  The Housing Corporation also cannot be held liable for violating KRS 530.070(1)(b) where Yonts did not obtain alcohol from the Housing Corporation in violation of KRS 224.085(3).

**C.  Negligence Per Se under KRS 243.020(1), 243.020(3) and 243.270**

Plaintiff also argues that the Housing Corporation is negligent per se for violating KRS §§ 243.020 and 243.270.  Both statutes prohibit the trafficking, selling, or storing of alcohol without a license.[5]  The Housing Corporation argues that these statutes are inapplicable to this case.

---

[5] KRS 243.020(1) states that "[a] person shall not do any act authorized by any kind of license with respect to the manufacture, storage, sale, purchase, transporting, or other traffic in alcoholic beverages unless he holds the kind of license that authorizes the act."

KRS 243.020(3) states that "[e]xcept as provided in KRS 243.036, 243.260, and 243.290, a person, conducting a place of business patronized by the public, who does not hold a license to sell distilled spirits, wine, or malt beverages, shall not permit any person to sell, barter, loan, give away, or drink distilled spirits, wine, or malt beverages on the premises of his place of business."

KRS 243.270(1) states that "[a] special private club license may be issued to any nonprofit social, fraternal, military, or political organization or club, which for more than one (1) year prior to the date of application has maintained and operated a club room or rooms from which the general public is excluded."

These claims were not raised in Plaintiff's original or amended complaint.  The Housing Corporation addresses them for the first time in its reply brief.  At the outset, the Court notes that it can refuse to consider the merits of new claims raised for the first time at the summary judgment stage.  *See Tucker v. Union of Needletrades*, *Industrial & Textile Employees*, 407 F.3d 784 (6th Cir. 2005) (holding that district court did not err in refusing to consider the merits of a claim raised on summary judgment); *Gilmour v. Gates*, *McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff could not raise a new claim in response to a summary judgment motion); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp.2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.  At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint  in accordance with Rule 15(a).").

The Court considers Plaintiff's new claims now only because it is obvious that they are without merit.  There is no basis in fact or law under which the Housing Corporation can be held liable for violating KRS 243.020(1), 243.020(3) or 243.270.

Plaintiff argues that the Housing Corporation is a business because the Fraternity collects an activity fee that is used by fraternity members to purchase alcohol that is then stored on the Housing Corporation's premises.  Plaintiff argues that this storage is unlawful under KRS 243.020(1) and 243.020(3) because the Housing Corporation does not have a license.  Plaintiff then argues that because Yonts drank alcohol on the property in the past, this attaches liability on November 10 when Yonts did not drink alcohol stored on the premises.

This attenuated argument fails for a number of reasons.  First, the Housing Corporation is

not a business, it is a non-profit organization.  Second, KRS 243.020(1) only applies where the storage of alcohol is intended for commerce.  *Blair v. Commonwealth*, 334 S.W.2d 924, 925 (Ky. 1960) (KRS 243.020 "is directed to those who are engaged in commerce, and require[s] a license before they may engage in the liquor business").  The Housing Corporation did not store alcohol on the premises for the purpose of selling it.  Finally, Yonts did not consume any alcohol stored by the Housing Corporation on November 10, therefore there is no basis upon which liability could extend to Shaheen's death.

Alternatively, Plaintiff argues that the Housing Corporation violated KRS 243.270(1) because the Housing Corporation is a non-profit social organization.  There is no Kentucky case law interpreting KRS 243.270(1).  However, given the purview of Kentucky case law regarding licenses of alcoholic beverages, the Court assumes, without deciding, that KRS 243.270(1) likewise pertains only to organizations that sell alcohol.  *See, e.g., Blair v. Commonwealth*, 334 S.W.2d 924, 925 (Ky. 1960) (KRS 243.020, 243.030, 243.040 only apply to those engaged in commerce); *Henry v. Commonwealth*, 228 S.W.2d 32 (Ky. Ct. App. 1950) (KRS 423.020(4) applies only to place of business patronized by the public); *Roberts v. Commonwealth*, 143 S.W.2d 856 (Ky. Ct. App. 1940) (mere possession of alcoholic liquor is not a violation KRS 423.020(1)).  Neither the Fraternity, its members, nor the Housing Corporation sold alcohol. Even more compelling is the fact that the Housing Corporation did not sell alcohol to Yonts on November 10.  Therefore, the Court finds that the Housing Corporation did not violate KRS 243.020(1), 243.020(3) and 243.270 as a matter of law.

**D. Vicarious Liability**

The Housing Corporation argues that it cannot be held vicariously liable for the negligent

21

acts of the Lambda Eta Chapter because the Chapter can only act by and through its members who have all been dismissed in this action.  The Court agrees.  Therefore, this claim is dismissed.

**E.  Federal Volunteer Protection Act**

Because the Court finds that the Housing Corporation was not negligent as a matter of law, it need not consider the applicability of the Volunteer Protection Act of 1997.  *See* 42 U.S.C. §14501 et seq.

**CONCLUSION**

For the above stated reasons, Defendants' Motions for Summary Judgment are **GRANTED**.

An appropriate order shall issue.